IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIONEL KELLEY, | |
| Plaintiff, | |
| v. | Case No. 20-CV-02881 |
| CHICAGO TRANSIT AUTHORITY, | Judge Mary M. Rowland |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lionel Kelley ("Kelley") alleges that his employer, the Chicago Transit Authority ("the CTA") discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-101 *et seq.* The CTA has filed a motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 14). For the reasons stated herein, this motion is denied.

**I. Background**

The following factual allegations are taken from the Complaint, (Dkt. 1), and are accepted as true for the purposes of this motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Kelley began working for the CTA as an electrician in April of 2015. He has Type 1 Diabetes, a condition that impacts the functioning of his endocrine system. Despite this condition, Kelley worked for the CTA for three years without incident.

On June 28, 2018, Kelley had a diabetic, or hypoglycemic, event. In response, on July 2, 2018 the CTA removed Kelley from his position. As of July 13, 2018, Kelley was cleared to work without restrictions by the CTA's medical care provider. On that date, the CTA refused to let him return to work. Kelley alleges that this refusal was due to "certain CTA managers' beliefs that a person with Type 1 diabetes could not work for the CTA as an electrician." (Dkt. 1, ¶ 10(b)). He alleges that the CTA refused to allow him to work during the subsequent 15 months for the same reason. On August 14, 2019, a labor arbitrator ordered the CTA to allow Kelley to return to work. Kelley returned to work on October 3, 2019.

## II. Legal Standard

A motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation marks and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts the plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in their favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a

2

formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007).

### III. Analysis

Kelley asserts that his removal from service was an adverse employment action taken because of his disability and despite his ability to perform the essential functions of the job, and as such, that it violated the ADA, Rehabilitation Act, and IHRA. (Dkt. 1, ¶¶ 9–12, 17–23). The CTA requests that the Court dismiss his claims pursuant to Rule 12(b)(6), asserting that Kelley failed to adequately allege that (1) he was disabled, (2) he was otherwise qualified to perform the essential functions of the job, and (3) the CTA took an adverse job action against him because of his disability.[1] (Dkt. 15, 3). These are the three elements of an ADA claim. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). The CTA further asserts that Kelley failed to sufficiently state a claim under both the Rehabilitation Act and the IHRA. In the Seventh Circuit courts analyze IHRA claims and Rehabilitation Act

---

[1] The CTA also argues that Kelley failed to identify any similarly situated employees who received better treatment. (Dkt. 15, 6). This is not an element of an ADA claim and CTA acknowledges in its final brief that Kelley is "not required to plead the existence of a similarly situated comparator to state a claim." (Dkt. 22, 9). The Court will not address this argument further.

3

claims using the same framework applicable in the ADA context.[2] *See Vargas v. DeJoy*, 980 F.3d 1184, 1190 n.4 (7th Cir. 2020) (courts "resolve Rehabilitation Act claims by looking to the same standards and provisions that govern the Americans with Disabilities Act"); *see also Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019) ("Illinois courts have looked to the standards applicable to analogous federal claims when evaluating IHRA claims, so we consolidate our analysis of both counts").

### A. Whether Kelley is Disabled

The CTA is correct that Kelley must allege that he is disabled. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In his Complaint, Kelley alleges that his Type 1 diabetes is a "disability" under the ADA because it is "a condition which substantially limits the functioning of his endocrine system, which is a major life function." (Dkt. 1, ¶ 8). Kelley asserts that "[g]iven the inherent nature" of diabetes, it "virtually always" qualifies as an impairment under the ADA. *Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 937 (N.D. Ill. 2018) (citing EEOC regulations that describe diabetes as a disability, and collecting cases); *see e.g. Haymon v. Metra*, 2020 WL 1548953 at *8 (N.D. Ill. Mar. 31, 2020) (plaintiff with insulin-dependent Type 2 diabetes had plausibly alleged that she had a disability).

---

[2] The Rehabilitation Act also requires plaintiffs to show that the defendant "received federal financial help." *Thurmon v. Mount Carmel High School*, 191 F. Supp. 3d 894, 898 (N.D. Ill. 2016) (citations omitted*)*. The CTA concedes that Kelley has adequately alleged it is federally funded. (Dkt. 22, 12).

4

The CTA asserts that although Kelley alleged that his diabetes interferes with a major life *function*, he failed to allege how his diabetes "substantially limits a major life *activity*." *See Prince v. State Dep't of Revenue*, 73 F. Supp. 3d 889 (N.D. Ill. 2010) (emphasis added) (plaintiff alleged that he had diabetes but not that it limited or restricted his ability to perform major life activities). The CTA contends that, "[n]ot every medical affliction amounts to [. . .] a substantial limitation on a major life activity." *Id.* at 893. Because Kelley did not sufficiently plead how he was "either unable to perform a major life activity or is significantly restricted as to [. . .] the major life activity compared to the average person," the CTA argues he failed to adequately allege a disability under the ADA. *Id.*

However, the *Prince* court relied exclusively on cases that predate the 2008 amendments to the ADA.[3] *Prince*, 73 F. Supp. 3d at 893 (citing *Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006); and *Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002)). Analysis that relies on statutory language predating the amendments is no longer persuasive. *See Cloutier v. GoJet Airlines*, LLC, 311 F. Supp. 3d 928, 938 (N.D. Ill. 2018).

In 2008, the ADA was amended to provide that "a major life activity also includes the operation of a major bodily function, including but not limited to,

---

[3] *See* ADA Amendments Act of 2008, Pub. L. 110–325, Sept. 25, 2008, 122 Stat. 3553. *Cf., Nawrot v. CPC Int't*, 277 F.3d 896, 904–05 (7th Cir. 2002) (finding that diabetes could qualify as a disability even under the pre-2008 ADA if the plaintiff needed to take insulin and experienced diabetic episodes). All Type 1 diabetes patients are insulin dependent, and Kelley himself suffered from at least one diabetic episode. *See What is Type 1 Diabetes?*, CDC, https://www.cdc.gov/diabetes/basics/what-is-type-1-diabetes.html (last reviewed February 12, 2021) (people with Type 1 diabetes "need to take insulin shots (or wear an insulin pump) every day").

5

functions of the [. . .] endocrine [system]." 42 U.S.C. § 12102(2)(B). Moreover, Congress intended the amended ADA's definition of disability to be "construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). To that end, the EEOC has promulgated regulations saying diabetes that substantially limits endocrine function is an impairment which, due to its "inherent nature," will "as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." 29 C.F.R. 1630.2(j)(3)(ii)–(iii). Therefore, by alleging that diabetes limits the functioning of his endocrine system, Kelley has adequately alleged that he suffered from a disability under the ADA, the Rehabilitation Act, and the IHRA.

### B. Whether Kelley Is Qualified

Under the ADA, Kelley must next allege "that he is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation." *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). In his Complaint, Kelley states that he "is a 'qualified individual' as defined by the ADA: he could perform the essential functions of his position at all times relevant to his case." (Dkt. 1, ¶ 9). Furthermore, he alleges that, despite having Type 1 diabetes, he worked as a CTA electrician for more than three years before the diabetic incident, that he was cleared to work "without restrictions" by the "CTA's own medical provider," and that he eventually returned to work for the CTA as an electrician following the incident. (Dkt. 1, ¶ 10). *See Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (at summary judgment plaintiff's years of experience as a pipe welder, combined with one month on the job after a hypertension incident,

6

established a question of fact for the jury as to whether plaintiff was qualified to perform the essential functions of his job); *Milsap v. City of Chicago*, Case No. 16-CV-4202, 2018 WL 488270 (N.D. Ill. Jan. 19, 2018) (plaintiff with 17 years of experience was qualified, even though he had required accommodations for his disability in recent years); *Garcia v. Illinois Dep't of Children & Family Servs.*, No. 04 C 3906, 2006 WL 2632919 (N.D. Ill. Sept. 11, 2006) (finding that because the plaintiff possessed the prerequisites for the position and her doctor cleared her to return to work, she was arguably qualified to work when she was terminated); *Winkfield v. Chicago Transit Auth.*, 435 F. Supp. 3d 904 (N.D. Ill. 2020) (fourteen years of experience and a doctor's clearance to work were sufficient to support allegations that plaintiff was qualified).

The CTA argues that Kelley did not sufficiently allege that he was qualified to perform the essential functions of his position for three reasons. (Dkt. 22, 4–8). First, it claims that Kelley's ability to perform the essential functions of the job during the three years prior to his hypoglycemic incident are irrelevant, because ability to perform must be alleged as of the time of the adverse employment action. The CTA attempts to distinguish the cases Kelley cites because the adverse employment decisions in those cases occurred while the plaintiffs were actively performing the essential functions of their positions, whereas Kelley suffered the (first) adverse employment action when he was on a medical leave. *See Gogos*, 737 F.3d at 1173; *Makeda-Phillips v. Illinois Sec'y of State*, No. 12- 3312, 2014 WL 518938 (C.D. Ill. Feb 10, 2014). This logic is not persuasive. Kelley's disability is his diabetes. While that

7

diabetic incident may have prevented him from performing the essential functions of his job temporarily, Kelley apparently had diabetes throughout his three-year tenure.[4] Therefore, his ability to perform the job's essential functions during those three years is relevant.

Second, the CTA argues that Kelley failed to allege that its doctor knew about his medical condition and job duties when he or she cleared Kelley to return to work. This argument is equally unpersuasive. Kelley does not have to plead "detailed factual allegations" in order to allege that he is qualified to perform the essential functions of the job, but rather must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *See Bell*, 835 F.3d at 738 (citation and internal quotation marks omitted); Fed. R. Civ. P. 8(a)(2). Kelley did not specifically allege that this doctor was aware of his job duties or medical condition. But logically, the CTA's medical professional, charged with determining whether a person is fit to return to work, must know the medical condition that caused the person's absence from work and the person's duties at work.

Third, the CTA argues that Kelley's ability to work 15 months after his diabetic incident does not demonstrate his ability to work immediately after the incident. (Dkt. 22, 8). This misses the mark. The CTA is arguing that Kelley cannot prove he was able to do the job immediately after his incident because the CTA *would not allow him* to work immediately after his incident. If an employer could insulate themselves

---

[4] Type 1 diabetes, previously called juvenile diabetes, is usually diagnosed in children, teens, and young adults. *See What is Type 1 Diabetes?*, CDC, https://www.cdc.gov/diabetes/basics/what-is-type-1-diabetes.html (last reviewed January 20, 2021).

8

from liability under the ADA by simply denying disabled employees the opportunity to return to work and perform the duties associated with a job, the ADA's protections would be illusory. Kelley has adequately alleged that he was qualified to perform his duties by stating that: (1) he had been doing the job for 3 years before the incident, and (2) a doctor had cleared him to do the job shortly after his incident. The Court in *Winkfield* held that "an individual is qualified if they have the necessary skill, experience, education, and other requirements of the position they hold or desire." 435 F. Supp. 3d at 909. The *Winkfield* plaintiff's performance of the essential functions of the job for several years, in conjunction with the clearance to work from a CTA doctor, was enough to raise a plausible claim. *Id.* at 909–10. Like the plaintiff in *Winkfield*, Kelley had been performing the essential functions of his position with the CTA for years and was cleared to work without restrictions by a CTA physician.

### C. Causation

The Seventh Circuit has held that the third element of an ADA claim can be properly alleged by stating that the plaintiff suffered an adverse employment action because of their disability. *Eiler v. City of Pana*, 606 F. App'x 305, 306 (7th Cir. 2015). Specifically, the Seventh Circuit found that it is "wrong to state that [the plaintiff] needs to 'establish' this claim at the pleading stage." *Id.* That being the case, "the pleading requirement for employment-discrimination claims is minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017).

The CTA argues that Kelley's claim that he suffered an adverse action because of his disability "is undermined by his failure to allege that CTA knew of his alleged

9

disability when it removed him from service and subsequently refused to allow him to return to work." (Dkt. 15, 6). Kelley alleged in his Complaint that the CTA managers removed him from service because of his diabetic incident and refused to allow him to return because they believed a person with Type 1 diabetes could not work for the CTA as an electrician. Accepting Kelley's factual allegations as true and drawing all permissible inferences in his favor, his Complaint alleges a causal connection between his disability and the adverse employment action he suffered.

## IV. Conclusion

For the foregoing reasons, the CTA's motion to dismiss (Dkt. 14) is denied.

E N T E R:

Dated: February 23, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

10